JUNTA DE RELACIONES DEL TRABAJO DE PUERTO RICO, peticionaria, *v.* NATIONAL PACKING CO., demandada.

*Número:* O-81-627     *Resuelto:* 23 de febrero de 1982

*Antonio F. Santos,* abogado de la peticionaria; *Manuel A. Núñez,* de *Curbelo & Núñez,* y *José A. Lebrón Tirado,* abogados de la demandada.

EL JUEZ ASOCIADO SEÑOR IRIZARRY YUNQUÉ emitió la opinión del Tribunal.

El 9 de noviembre de 1981 la Junta de Relaciones del Trabajo de Puerto Rico nos solicitó que pusiéramos en vigor un laudo de arbitraje dictado a favor del Congreso de Uniones Industriales y contra la National Packing Company. El laudo fue emitido el 21 de diciembre de 1979 por el árbitro Fernando Hernández Benítez del Departamento del Trabajo y Recursos Humanos. El procedimiento fue regido por el siguiente acuerdo de sumisión:

> Determinar si la Compañía violó o no el Artículo XIII del convenio colectivo, al no pagar los días feriados del 4 y el 25 de julio de 1979 y el Día del Trabajo de ese mismo año, a los empleados temporeramente suspendidos entre el día 1 y 4 de junio de 1979, por falta de trabajo.

El Art. XIII del convenio, que establece el pago por días feriados, dispone:

> Sección 1—Se pagarán ocho (8) horas consecutivas a tiempo completo a razón del tipo regular de paga por:

> 1. Año Nuevo                   1 de enero
>
> 2.       .       .       .       .       .       .       .       .
>
> 3. Día del Trabajo
>
> 4.       .       .       .       .       .       .       .
>
> 7. Día de la Constitución      25 de julio
>
> 8. Día de la Independencia     4 de julio

> Aunque no se trabajen, si:

> a) El empleado tiene (1) año o más [de] antigüedad en la planta según lo establece el Artículo V, y

> b) El empleado trabaja sus día [*sic*] regular de trabajo inmediatamente antes y después del día feriado a menos que haya excusado su ausencia, y

> c) El empleado trabaja el día feriado si estaba programado para trabajar, y

d) El empleado trabaja por lo menos un (1) período de siete (7) días calendarios de trabajo con anterioridad al día feriado.

El árbitro interpretó que la compañía había contraído la obligación de pagar a sus empleados los días feriados designados en el convenio sujeto a la satisfacción por éstos de ciertos requisitos y que en el caso de los empleados cesanteados temporeramente por falta de trabajo, al conservar su status de empleados, tienen derecho al pago aunque no cumplan con todos los requisitos de elegibilidad. Estos requisitos de elegibilidad, según el árbitro, constituyen una medida para evitar el ausentismo antes y después del día feriado, por lo cual solo son de aplicación cuando hay trabajo disponible para los empleados.

El árbitro resolvió que los requisitos de los incisos *a* y *b* del Art. XIII son de aplicación tanto en el caso de que haya trabajo disponible como cuando no haya, por lo cual deben ser cumplidos por los cesanteados para tener derecho al pago. Estos requisitos se cumplen en el caso de los cesanteados si tienen un año o más de antigüedad en el empleo y trabajaron el día inmediatamente antes de comenzar el cese y el día inmediatamente después de terminar éste. A base de lo anterior resolvió que la Compañía violó el Art. XIII del convenio al no pagar los días feriados reclamados y ordenó el pago de los mismos.

El 2 de diciembre de 1981 concedimos a la parte demandada la oportunidad de mostrar causa por la cual no debía ponerse en vigor el laudo de arbitraje. En su comparecencia la National Packing Co. plantea que el laudo adolece de varias causas de nulidad.

Primeramente señala que el laudo es nulo por haberse excedido el árbitro de la jurisdicción que se le concedió en el pacto de sumisión, porque no se le concedió autoridad para ordenar el pago de suma alguna. Plantea además que se excedió en su autoridad al modificar y restar a las cláusulas del convenio, en contravención de lo allí dis-

puesto. Como otra causa de nulidad señala que el árbitro varió las cláusulas del convenio, violando así la política pública proclamada en la Ley de Relaciones del Trabajo de Puerto Rico que declara que los convenios colectivos son instrumentos para promover la política pública de dicha ley y no pueden ser variados unilateralmente.

■ Antes de considerar los dos planteamientos conviene apuntar que en el convenio colectivo se estableció que las decisiones del árbitro serán finales, firmes, inapelables y obligatorias para las partes. No se impuso la limitación de que tenían que ser conforme a derecho. En casos como éste la norma adoptada por este Tribunal es que aun cuando quizás hubiéramos llegado a una conclusión distinta si la cuestión estuviera sometida ante nosotros, "las partes que firman un convenio de esta naturaleza deben comprender que han sustituido al árbitro por las cortes para la determinación de todas las cuestiones de hecho y de derecho sustantivo". *Junta Relaciones del Trabajo* v. *N.Y. & P.R. S/S. Co.*, 69 D.P.R. 782, 800–801 (1949); *Colón Molinary* v. *A.A.A.*, 103 D.P.R. 143 (1974).

■ El Tribunal ha adoptado la norma de autorrestricción judicial y solo anulará un laudo si están presentes algunas de las siguientes causales: fraude, conducta impropia, falta de debido procedimiento de ley, violación de la política pública, falta de jurisdicción, o que el laudo no resuelva todas las cuestiones en controversia. *Junta Relaciones del Trabajo* v. *N.Y. & P.R. S/S. Co.*, supra, pág. 800; *J.R.T.* v. *Otis Elevator Co.*, 105 D.P.R. 195, 199 (1976).

■ A base de estos principios consideremos los planteamientos de la Compañía para impugnar el laudo. En cuanto al planteamiento de falta de jurisdicción resolvemos que el árbitro actuó dentro de la autoridad concedida por el acuerdo de sumisión. Éste claramente le concedía autoridad para determinar si los empleados cesanteados temporeramente tenían derecho a paga por los días feriados reclamados. Habiendo resuelto el árbitro que sí lo

tenían, el remedio que correspondía era ordenar el pago. La tendencia moderna en el Derecho laboral es la de concederle amplia autoridad al árbitro para diseñar un remedio adecuado a su laudo. *S.I.U. de P.R.* v. *Otis Elevator Co.*, 105 D.P.R. 832, 840-842 (1977); *Steelworkers* v. *Enterprise Corp.*, 363 U.S. 593, 597 (1960); F. Elkouri y E. Elkouri, *How Arbitration Works*, 3ra ed. Washington, The Bureau of National Affairs, Inc., 1973, pág. 351.

■ La Compañía también impugnó el laudo a base de que el árbitro se excedió en su autoridad, pues en el convenio se estableció que ni el árbitro ni las partes tendrían autoridad para alterar, modificar, enmendar o restar a las cláusulas del convenio. Entiende que la actuación del árbitro al determinar que algunos de los requisitos para el pago de días feriados no eran aplicables modificó y restó disposiciones al convenio. No tiene razón. La función principal de un árbitro en el campo de las relaciones obrero-patronales es la de interpretar las cláusulas de los convenios colectivos. Elkouri, *op. cit.*, pág. 296. Al ejercer esta función el árbitro no está limitado exclusivamente al contenido del convenio, sino que puede hacer uso de otras fuentes, siempre que no se aparte de la esencia del convenio. *Steelworkers* v. *Enterprise Corp.*, supra, pág. 597. La libertad de interpretación del árbitro dependerá de la claridad de las cláusulas del convenio. Una cláusula cuyo lenguaje parece ser claro puede ser ambigua si admite que se le den interpretaciones conflictivas.(1) Elkouri, *op. cit.*, pág. 296. Dentro de estas

---

(1) A modo de ejemplo y sin que se entienda que estamos enjuiciando la corrección de la interpretación dada por el árbitro en el laudo impugnado en el caso *Hemp & Co.*, 37 LA 1009, 1010 (1962), el árbitro distinguió entre una cláusula contractual que requería que el empleado trabajara *su último* día de trabajo programado antes del feriado y *su primer* día programado después del feriado, y una que requería que el empleado trabajara el *último día* programado antes del feriado, y *el primer* día programado después del feriado. En la primera situación el árbitro interpretó que los empleados cesanteados temporeramente tenían derecho a paga por los días feriados si habían trabajado hasta el último

limitaciones el árbitro tiene flexibilidad para hacer su interpretación.

El segundo fundamento para impugnar el laudo es que el árbitro violó la política pública al modificar y restar cláusulas del convenio, pues los convenios están revestidos de gran interés público, representan la ley entre las partes y al ser variados por el árbitro se frustra la política pública expresada en la Ley de Relaciones del Trabajo de Puerto Rico. Al discutir el fundamento anterior resolvimos que el árbitro actuó dentro del límite de su autoridad al interpretar la cláusula sobre paga por días festivos, por lo cual no procede la impugnación por este segundo argumento.

Por los fundamentos expresados resolvemos que el laudo es válido. En consecuencia, *se ordenará a la National Packing Co. dar cumplimiento al mismo sin más dilación.*

día antes de ser cesanteados y el primer día luego de finalizado el cese. En la segunda situación no se concedió derecho a paga, pues el convenio requería que se trabajara el día antes y después del feriado y los empleados cesanteados no podían cumplir con el requisito.