Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL X

| | | |
|---|---|---|
| AUTORIDAD METROPOLITANA DE AUTOBUSES<br><br>Apelada<br><br><br>V.<br><br><br>HERMANDAD DE EMPLEADOS DE OFICINA Y RAMAS ANEXA DE PUERTO RICO<br><br>Apelantes | TA2025CE00049 | ***Certiorari*** procedente del Tribunal de Primera Instancia, Sala Superior de San Juan<br><br>Caso Núm.: SJ2022CV03029<br><br>Sobre: Solicitud de Impugnación de Laudo Falta de Arbitrabilidad Sustantiva<br><br>Caso Núm.: A-20-204 A-20-205 A-20-206 A-20-207 A-20-208<br><br>Árbitro: Liza Ocasio Oyola |

Panel integrado por su presidenta; la Juez Lebrón Nieves, la Jueza Romero García y el Juez Rivera Torres

*Lebrón Nieves, Juez Ponente*

## RESOLUCIÓN

En San Juan, Puerto Rico, a 21 de julio de 2025.

El 20 de junio de 2025, compareció ante este Tribunal de Apelaciones, la Hermandad de Empleados de Oficina y Ramas Anexas de la Autoridad Metropolitana de Autobuses (en adelante, HEOAMA o parte peticionaria), por medio de recurso de *Certiorari*. Mediante este, nos solicita que, revisemos la *Orden* emitida y notificada el 22 de mayo de 2025, por el Tribunal de Primera Instancia, Sala Superior de San Juan. En virtud del aludido dictamen, el foro *a quo* declaró No Ha Lugar la *Reconsideración* presentada parte peticionaria.

Por los fundamentos que adelante se exponen, se deniega la expedición del auto de *certiorari*.

**I**

Los eventos procesales del caso que dan lugar al recurso de epígrafe son los que en adelante se reseñan. La Autoridad Metropolitana de Autobuses de Puerto Rico (en adelante, AMA o parte recurrida), el 21 de abril de 2025, presentó *Solicitud de Impugnación de Laudo de Arbitraje*. En esencia, la AMA solicitó que, se revocara el laudo de arbitraje emitido el 23 de marzo de 2022 por el Negociado de Conciliación y Arbitraje del Departamento del Trabajo (en adelante, el Negociado), con relación a los casos número: A-20-204, A-20-205, A-20-206, A-20-207 y A-20-208. En su solicitud, sostuvo que, el Negociado determinó que, las cinco (5) Querellas presentadas por la HEOAMA eran arbitrables en su modalidad sustantiva y procesal y por ello, citó a las partes a una vista de arbitraje el 3 de agosto de 2022. Mediante su moción, la AMA adujo lo siguiente:

> **ERROR COMETIDO**: Cometió error de derecho la Arbitro Liza Ocasio Oyola al resolver que la querella presentada por la HEOAMA constituye un agravio legítimo cubierto por el Convenio Colectivo y se declara con jurisdicción para atender la misma, cuando por mandato expreso de las leyes 3 de 2017, 66 de 2014 y 26 de 2017, las disposiciones al amparo de lo cual la HEOAMA sustenta su reclamo fueron revocadas y dejadas sin efecto.

A su vez, en su petitorio solicitó la imposición de costas y honorarios de abogados a la HEOAMA.

Por su parte, la HEOAMA presentó la *Oposición a Solicitud Impugnación Laudo de Arbitraje*. En primer lugar, arguyó que, lo resuelto por el Negociado no había sido una determinación en sus méritos de la controversia entre las partes. Sino que, dispuso si entrar en consideraciones ulteriores que, en efecto, las querellas reunían los elementos procesales y sustantivos necesarios para oportunamente celebrar una vista. Alegó que, dicha determinación

significaba que, el asunto en controversia no había sido resuelto y que, las partes debían someterse al proceso pactado y descrito en el Reglamento para el Orden Interno de los Servicios del Negociado de Conciliación y Arbitraje. Finalmente, expresó que, el foro de primera instancia debía abstenerse de intervenir en la controversia con el propósito de que lo acordado por las partes prevaleciera y las querellas fueran resueltas en sus méritos por el Negociado. Por tanto, le solicitó al foro *a quo* que desestimara la impugnación presentada por la AMA.

El 15 de abril de 2025, la primera instancia judicial emitió *Sentencia*. En primer lugar, emitió las siguientes determinaciones de hechos:

1. Para las fechas de los hechos que suscitan la controversia ante nos, la Autoridad Metropolitana de Autobuses y la Hermandad de Empleados de Oficina de la Autoridad Metropolitana de Autobuses, regían su relación laboral a través de un Convenio Colectivo.

2. El Artículo Número XXIII, titulado Comité de Quejas y Agravios, del Convenio Colectivo suscrito entre las partes, dispone que las controversias surgidas al amparo del contrato laboral, de no ser resueltas internamente, serán sometidas a la atención del Negociado de Conciliación y Arbitraje del Departamento del Trabajo.

3. El Querellante, Juan Antonio Rodríguez Velázquez, es miembro *bonafide* de la Hermandad de Empleados de Oficinas y Ramas Anexas de Puerto Rico y ocupa el puesto de despachador en la AMA. Dicho puesto es de naturaleza operacional y forma parte de la Unidad Apropiada la cual es representada por la Hermandad. De forma tal que los términos y condiciones de empleo del Querellante están cubiertos por el Convenio Colectivo vigente entre la AMA y la Hermandad.

4. En virtud de que varias violaciones de la AMA al Convenio Colectivo no pudieron ser resueltas internamente, las partes solicitaron del Negociado de Conciliación y Arbitraje que señalara una vista de arbitraje para resolver las controversias.

5. La vista de arbitraje de las querellas fue señalada para el 30 de septiembre de 2021.

6. La AMA levantó las defensas de arbitrabilidad procesal y sustantiva de las querellas.

7. Después del examen de rigor, el 23 de mayo de 2022, la Árbitro Ocasio Oyola resolvió que las Querellas de epígrafe son arbitrables procesal y sustantivamente y señaló el 3 de agosto de 2022 para la celebración a la vista de arbitraje a fin de considerar en sus méritos las reclamaciones.

8. La vista fue señalada para el 3 de agosto de 2022.

Concluyó, además lo siguiente:

La árbitro, en virtud del convenio colectivo, se declaró con jurisdicción para atender la querella. La controversia traída ante nos, no ha sido atendida en su totalidad en el Negociado de Conciliación y Arbitraje. Por ello, concluimos que, según lo establece el convenio colectivo, se dilucide la presente controversia en sus méritos ante el Negociado de Conciliación y Arbitraje del Departamento del Trabajo y que sea dicho foro quien adjudique en primera instancia la controversia de epígrafe y determine, entre otras cosas, si en efecto la Ley 66-2014 y/o la Ley 3-2017 dejaron sin efecto alguna cláusula del convenio colectivo.

Consecuentemente, declaró No Ha Lugar la *Solicitud de Impugnación de Laudo de Arbitraje*.

El 23 de abril de 2025, la HEOAMA presentó el *Memorando de Costas y Honorarios de Abogado*. Solicitó al foro de primera instancia que le impusiera el pago de las costas del litigio y los honorarios de abogado a la AMA, conforme a la Regla 44 de las Reglas de Procedimiento Civil.

Mientras que, el 3 de mayo de 2025, la parte recurrida presentó la *Moción en Oposición a Memorando de Costas y Honorarios de Abogado en Cumplimiento de Orden*. arguyó que la solicitud de la parte peticionaria no incluía partida de gastos o desembolsos alguna, por lo que no procedía como cuestión de derecho la concesión de costas. Añadió que, tampoco procedía en la medida en que, el Tribunal de Primera Instancia declaró No Ha Lugar la *Solicitud de Impugnación de Laudo de Arbitraje*, y que, no dispuso finalmente de la reclamación de la HEOAMA al devolver el caso ante el Negociado. Adujo que, tampoco procedía la imposición de honorarios de abogado ya que, la AMA no había exhibido

conducta temeraria. Por tanto, solicitó al foro *a quo* que declarara No Ha Lugar la solicitud de la HEOAMA.

En atención a las mociones presentadas por las partes, el 8 de mayo de 2025, notificada ese mismo día, el foro *a quo* emitió *Resolución* donde determinó lo siguiente:

> Luego de evaluar las mociones en las entradas SUMAC 18 y SUMAC 20. El Tribunal declara NO HA LUGAR la moción en la entrada SUMAC 18 presentada por la parte recurrida debido a que lo allí incluido no constituyen costas y en el presente caso el Tribunal no hizo determinación de temeridad.

Es decir, declaró No Ha Lugar el *Memorando de Costas y Honorarios de Abogado*, presentado por la HEOAMA.

En desacuerdo, el 21 de mayo de 2025, la parte peticionaria presentó *Solicitud de Reconsideración*.

El 22 de mayo de 2025, notificada ese mismo día, el foro *a quo* emitió una *Orden*, mediante la cual dispuso:

> Luego de evaluar la Solicitud de Reconsideración presentada por la parte Querellante-Recurrida en la entrada SUMAC 22, el Tribunal la declara No Ha Lugar.

Aún inconforme, la parte peticionaria acudió ante este foro revisor mediante recurso de *Certiorari* y esgrimió los siguientes señalamientos de error:

> PRIMER ERROR: ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA AL DESATENDER LO QUE CONSTITUYE TEMERIDAD PARA PROPÓSITOS DE APLICAR HONORARIOS DE ABOGADO.

> SEGUNDO ERROR: ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA AL NO OBEDECER EL MANDATO DE LEY VIGENTE Y DENEGAR LA CONCESIÓN DE HONORARIOS DE ABOGADO

El 7 de julio de 2025, la AMA presentó la *Oposición a Expedición de Certiorari*.

Con el beneficio de la comparecencia de las partes, procedemos a disponer del recurso ante nuestra consideración.

## II

### *A. El Certiorari*

El certiorari es un recurso extraordinario mediante el cual un tribunal de jerarquía superior puede revisar discrecionalmente una decisión de un tribunal inferior. *Rivera et al. v. Arcos Dorados et al.*, 212 DPR 194 (2023); *Torres González v. Zaragoza Meléndez*, 211 DPR 821 (2023); *Caribbean Orthopedics v. Medshape et al.*, 207 DPR 994, 1004 (2021); *Pueblo v. Rivera Montalvo*, 205 DPR 352, 372 (2020)[1]. Ahora bien, tal "discreción no opera en lo abstracto. A esos efectos, la Regla 40 del Reglamento del Tribunal de Apelaciones, […], dispone los criterios que dicho foro deberá considerar, de manera que pueda ejercer sabia y prudentemente su decisión de atender o no las controversias que le son planteadas". (citas omitidas) *Torres Martínez v. Torres Ghigliotty*, 175 DPR 83, 97 (2008); *Pueblo v. Rivera Montalvo*, supra, pág. 372; *Torres González v. Zaragoza Meléndez*, supra, pág. 848. La precitada Regla dispone lo siguiente:

> El Tribunal tomará en consideración los siguientes criterios al determinar la expedición de un auto de certiorari o de una orden de mostrar causa:
>
> (A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.
>
> (B) Si la situación de hechos planteada es la más indicada para el análisis del problema.
>
> (C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.
>
> (D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.
>
> (E) Si la etapa de los procedimientos en que se presenta el caso es la más propicia para su consideración.

---

[1] Véase también, *Medina Nazario v. McNeil Healthcare LLC*, 194 DPR 723, 728-729 (2016); *IG Builders et al. v. BBVAPR*, 185 DPR 307, 337-338 (2012); *Pueblo v. Díaz de León*, 176 DPR 913, 917 (2009).

(F)  Si la expedición del auto o de la orden de mostrar causa no causa un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

(G)  Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.[2]

No obstante, "ninguno de los criterios antes expuestos en la Regla 40 del Reglamento del Tribunal de Apelaciones, supra, es determinante, por sí solo, para este ejercicio de jurisdicción, y no constituye una lista exhaustiva". *García v. Padró*, 165 DPR 324, 327 (2005). Por lo que, de los factores esbozados "se deduce que el foro apelativo intermedio evaluará tanto la corrección de la decisión recurrida, así como la etapa del procedimiento en que es presentada; esto, para determinar si es la más apropiada para intervenir y no ocasionar un fraccionamiento indebido o una dilación injustificada del litigio". *Torres Martínez v. Torres Ghigliotty*, supra, pág. 97.

Por otro lado, a partir del 1 de julio de 2010, se realizó un cambio respecto a la jurisdicción del Tribunal Apelativo para revisar los dictámenes interlocutorios del Tribunal de Primera Instancia mediante recurso de *certiorari*. A tal fin, la Regla 52.1 de Procedimiento Civil, dispone, en su parte pertinente, lo siguiente:

> El recurso de *certiorari* para revisar resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia, solamente será expedido por el Tribunal de Apelaciones cuando se recurra de una resolución u orden bajo las Reglas 56 y 57 o de la denegatoria de una moción de carácter dispositivo. No obstante, y por excepción a lo dispuesto anteriormente, el Tribunal de Apelaciones podrá revisar órdenes o resoluciones interlocutorias dictadas por el Tribunal de Primera Instancia cuando se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios, anotaciones de rebeldía, en casos de relaciones de familia, en casos que revistan interés público o en cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia. Al denegar la expedición de un recurso de *certiorari* en estos casos, el Tribunal de Apelaciones no tiene que fundamentar su decisión.

---

[2] Regla 40 del Reglamento del Tribunal de Apelaciones, según enmendada, *In re Aprob. Enmdas. Reglamento TA*, 2025 TSPR 42, pág. 59, 215 DPR __ (2025).

Según se desprende de la precitada Regla, este foro apelativo intermedio podrá revisar órdenes interlocutorias discrecionalmente, cuando se recurre de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios, anotaciones de rebeldía o en casos de relaciones de familia o que revistan interés público, o en aquellas circunstancias en las que revisar el dictamen evitaría un irremediable fracaso de la justicia, entre otras contadas excepciones.

El certiorari, como recurso extraordinario discrecional, debe ser utilizado con cautela y solamente por razones de peso. *Pérez v. Tribunal de Distrito*, 69 DPR 4, 7 (1948). Este procede cuando no está disponible la apelación u otro recurso que proteja eficaz y rápidamente los derechos del peticionario. *Pueblo v. Tribunal Superior*, 81 DPR 763, 767 (1960). Nuestro Tribunal Supremo ha expresado también que "de ordinario, el tribunal apelativo no intervendrá con el ejercicio de la discreción de los tribunales de instancia, salvo que se demuestre que hubo un craso abuso de discreción, o que el tribunal actuó con prejuicio o parcialidad, o que se equivocó en la interpretación o aplicación de cualquier norma procesal o de derecho sustantivo, y que nuestra intervención en esa etapa evitará un perjuicio sustancial". *Zorniak Air Servs. v. Cessna Aircraft Co.*, 132 DPR 170, 181 (1992*); Rivera y otros v. Bco. Popular*, 152 DPR 140, 155 (2000).

### B. Ley de Arbitraje de Puerto Rico

El arbitraje se ha definido como el "[p]rocedimiento para resolver controversias, sometiéndolas a un árbitro o a un cuerpo de árbitros, para luego de considerar las pruebas, emitir su laudo." I. Rivera García, *Diccionario de Términos Jurídicos*, 3ra ed. rev., Lexis-Nexis, 2000, pág. 18; *Aquino González v. A.E.E.L.A.*, 182 DPR 1, 19 (2011). El propósito es que las partes presenten sus respectivas controversias ante un ente neutral, entiéndase un árbitro o un panel

de árbitros con autoridad para adjudicar e imponer una decisión a las partes. *Aquino González v. A.E.E.L.A.*, supra, pág. 19. El Máximo Foro ha expresado que, algunas de las ventajas de presentar una controversia o reclamación al procedimiento de arbitraje son: la pericia del ente neutral respecto a la materia objeto de disputa, la privacidad e informalidad en los procedimientos, los bajos costos del proceso y la rapidez en la toma de decisiones. (Citas omitidas). *Íd.*, págs. 19-20.

Las partes en un contrato pueden anticipar las potenciales controversias futuras derivadas de su relación contractual y obligarse a someterlas ante un procedimiento de arbitraje. Artículo 1 de la Ley de Arbitraje, 32 LPRA § 3201; *H.R. Inc., v. Vissepó & Díaz Constr.*, 190 DPR 597, 605 (2014); *Constructora Estelar v. Aut. Edif. Pub.*, 183 DPR 1, 32 (2011); *VDE Corporation v. F&R Contractors*, 180 DPR 21, 32-33 (2010). Es por ello que, el arbitraje es una figura jurídica inherentemente contractual y es exigible solamente cuando las partes así lo hayan pactado. *H.R. Inc., v. Vissepó & Díaz Constr.*, supra, pág. 605. Respecto al arbitraje, nuestro Máximo Foro ha determinado que las partes que voluntariamente se someten a un procedimiento de arbitraje deberán agotar los remedios contractuales previo a acudir a los tribunales, salvo que exista justa causa para obviarlos. *Íd.*, pág. 606. Lo anterior responde a múltiples razones, tanto del derecho de obligaciones y contratos como de orden público. *Íd.* De esta manera, las partes involucradas acuerdan de forma voluntaria limitar la jurisdicción de los tribunales sobre su persona para dar paso al proceso de arbitraje. *Íd.* Así se favorece la voluntad de las partes cuando deciden cuál es el mecanismo apropiado para la resolución de su controversia. *Íd.*

A esos efectos, se ha dicho que un laudo de arbitraje, en general, goza de una naturaleza similar a la de una sentencia judicial. *U.I.L. de Ponce v. Dest. Serrallés, Inc.*, 116 DPR 348, 354

(1985). Dicho de otra manera, el laudo de arbitraje, "no es ni un contrato ni una sentencia, pero disfruta de la naturaleza de ambos". (Énfasis nuestro). *C.O.P.R. v. S.P.U.*, 181 DPR 299, 328 (2011); *VDE Corporation v. F & R Contractors*, supra, pág. 45. De igual modo, la función del árbitro se ha semejado a la ejercida por una sala sentenciadora de primera instancia. *U.I.L. de Ponce v. Dest. Serrallés, Inc.*, supra, pág. 354. "Un acuerdo en un [contrato] para utilizar el arbitraje como mecanismo de ajuste de controversias crea un foro sustituto a los tribunales de justicia. En efecto, ello representa una sustitución del juez por el árbitro." *Condado Plaza v. Asoc. Emp. Casinos P.R.*, 149 DPR 347, 352 (1999). Esta norma ha sido consistentemente reiterada por el Tribunal Supremo al expresar que "[u]na vez se somete la disputa ante un árbitro para su resolución, las partes, en efecto, sustituyen a las cortes por el árbitro 'para la determinación de todas las cuestiones de hecho y de derecho sustantivo y renuncian al derecho a litigar tales cuestiones ante los tribunales'." *C.O.P.R. v. S.P.U.*, supra, pág. 326. Véanse, además: *Condado Plaza v. Asoc. Emp. Casinos P.R.*, supra, pág. 352; *J.R.T. v. Central Mercedita, Inc.*, 94 DPR 502, 509-510 (1967); *Rivera Adorno v. Autoridad de Tierras*, 83 DPR 258, 264-265 (1961); *Junta de Relaciones del Trabajo v. N.Y. & P.R. S/S Co.*, 69 DPR 782, 800 (1949). Claro está, el convenio de sumisión delimitará la facultad decisional del árbitro y su esfera de acción. Es decir, so pena de nulidad, el árbitro ni el laudo que resulte pueden exceder los poderes delegados. *Constructora Estelar v. Aut. Edif. Púb.*, supra, pág. 30.

En Puerto Rico existe una vigorosa política pública a favor del arbitraje. *H.R. Inc., v. Vissepó & Díaz Constrc.*, supra, pág. 605; *Aut. Puertos v. HEO*, 186 DPR 417, 440 (2012); *Constructora Estelar v. Aut. Edif. Pub.*, supra, pág. 30; *Aquino González v. A.E.E.L.A*, supra,

pág. 26.[3] Esta política se recoge en la Ley de Arbitraje, *supra*, y en principio, está motivada por el interés del Estado de facilitar la solución de disputas por una vía más rápida, flexible y menos onerosa que los tribunales para la resolución de controversias que emanan de la relación contractual o laboral entre las partes. *Íd.*

En relación con la intervención revisora de los tribunales, el Artículo 22 de la Ley de Arbitraje, *supra*, regula el proceso de revocación del laudo:

> En cualquiera de los casos siguientes el tribunal podrá a solicitud de cualquiera de las partes y previo aviso y vista, dictar orden revocando el laudo:
>
> (a) Cuando se obtuvo mediante corrupción, fraude u otro medio indebido.
>
> (b) Cuando hubo parcialidad o corrupción evidente de los árbitros o cualquiera de ellos.
>
> (c) Cuando los árbitros actuaren erróneamente al rehusar posponer la vista luego de mostrarse causa justificada para ello, o al rehusar oír evidencia pertinente y material a la controversia, o cuando incurrieren en cualquier error que perjudique los derechos de cualquiera de las partes.
>
> (d) Cuando los árbitros se extendieren en sus funciones o cuando el laudo emitido no resolviera en forma final y definitiva la controversia sometida.
>
> (e) Si no hubo sumisión o convenio de arbitraje válido y el procedimiento se inició sin diligenciar la notificación de intención de arbitrar, según se dispone en el Artículo 11, o la moción para obligar el arbitraje, según se dispone en el inciso 1 del Artículo 4.
>
> En el caso en que se revoque un laudo, el tribunal podrá a su discreción, ordenar una nueva vista, ante los mismos árbitros, o ante árbitros nuevos a seleccionarse en la forma que se disponga en el convenio para la selección de los árbitros originales, y cualquier disposición que limite el término dentro del cual los árbitros podrán llegar a una decisión se considerará aplicable al nuevo arbitraje y a comenzar desde la fecha de la orden del tribunal. 32 LPRA § 3222.

---

[3] Véase también *Quiñones v. Asociación*, 161 DPR 668, 673 (2004); *Crufon Const. v. Aut. Edif. Pubs.*, 156 DPR 197, 205 (2002); *Medina v. Cruz Azul de P.R.*, 155 DPR 735, 738 (2001).

Estas normas de autolimitación judicial en la revisión de laudos conlleva que los tribunales no lleguen a "considerar los méritos de un laudo, independientemente de que, de haber sido la controversia inicialmente resuelta a nivel judicial, la determinación final hubiese sido otra." *Aut. Puertos v. HEO*, supra, pág. 427, citando a. Acevedo Colom, *Legislación de Relaciones del Trabajo Comentada*, San Juan, 2007, pág. 271. De manera que, alegados errores en la apreciación de la prueba o en la aplicación de las normas de derecho en laudos finales, no deben ser objeto de revisión por los tribunales. *Febus y otros. v. MARPE Const. Corp.*, 135 DPR 206, 217 (1994); *C.R.U.V. v. Hampton Dev.*, 112 DPR 59, 64 (1982); *Rivera v. Samaritano & Co., Inc.*, 108 DPR 604, 608-609 (1979). Las determinaciones de un árbitro, en cuanto a los hechos y en cuanto a derecho, son finales y no revisables por los tribunales, aunque haya mediado error por parte de éstos en la apreciación de los hechos y el derecho aplicable, y aun cuando el tribunal hubiese llegado a una conclusión distinta. *Febus y otros. v. MARPE Const. Corp.*, supra, págs. 217-218; *Junta Relaciones del Trabajo v. N.Y. & P.R. S/S. Co.*, supra, págs. 797-800; *C.R.U.V. v. Hampton Dev.*, supra, pág. 64. Por consiguiente, la revisión judicial de los laudos emitidos en un procedimiento de arbitraje se limitará a las instancias en las cuales quede demostrada la existencia de fraude, conducta impropia del árbitro, falta del debido proceso de ley, ausencia de jurisdicción, omisión de resolver todas las cuestiones en disputa o que el laudo sea contrario a la política pública. *Aut. Puertos v. HEO*, supra, pág. 427, citando a, *C.O.P.R. v. S.P.U.*, supra, pág. 328; *Febus y otros. v. MARPE Const. Corp.*, supra, págs. 216-217.[4]

---

[4] Véase también, *Depto. Educ. v. Diaz Maldonado*, 183 DPR 315, 325-326 (2011); *C.F.S.E v. Unión de Médicos*, 170 DPR 443, 449 (2007); *Condado Plaza v. Asoc. Emp. Casinos P.R.*, supra, pág. 353.

Ahora, esta norma de autolimitación no se aplica en esos extremos a los casos en que las partes pactan que los laudos de arbitraje se emitan conforme a derecho. En esas instancias, el árbitro debe velar celosamente por que se cumplan las reglas jurídicas vigentes en nuestro ordenamiento legal y debe rendir su decisión según las doctrinas legales prevalecientes. *Depto. Educ. v. Díaz Maldonado*, supra, pág. 326. Los remedios concedidos deben estar adheridos a nuestro andamiaje jurídico. *Íd.* págs. 326-327. En consecuencia, la revisión judicial será más incisiva, por lo cual "los tribunales podrán corregir errores jurídicos en referencia al derecho aplicable." *Aut. Puertos v. HEO*, supra, pág. 427, citando a *Condado Plaza v. Asoc. Emp. Casinos P.R.*, supra, pág. 353. En la revisión de laudos con arreglo a derecho, el tribunal tiene la facultad para revisar los méritos jurídicos del laudo. *Constructora Estelar v. Aut. Edif. Pub.*, supra, pág. 33; *C.F.S.E v. Unión de Médicos*, supra, pág. 454; *Condado Plaza v. Asoc. Emp. Casinos P.R.*, supra, nota al calce 4, pág. 354; *Febus y otros v. MARPE Const. Corp.*, supra, págs. 216-217.[5] En estos casos la revisión judicial es análoga a la de las decisiones administrativas. *Aut. Puertos v. HEO*, supra, pág. 446; *Depto. Educ. v. Diaz Maldonado*, supra, pág. 326, citando a *C.F.S.E. v. Unión de Médicos*, supra, pág. 449; *Constructora Estelar v. Aut. Edif. Pub.*, supra, pág. 33; *Rivera v. Dir. Adm. Trib.*, 144 DPR 808, 821-822 (1998). Por tal razón, las determinaciones de hechos de los laudos de arbitraje conforme a derecho pueden ser revisadas cuando no están sostenidas por evidencia sustancial en el expediente. *Constructora Estelar v. Aut. Edif. Pub.*, supra, pág. 33; *U.T.I.C.E. v. C.E.A.T.*, 147 DPR 522, 528 (1999). Asimismo, tales determinaciones de hechos gozan de gran deferencia. *Condado Plaza v. Asoc. Emp.*

---

[5] *J.R.T. v. Corp. Crédito Agrícola*, 124 DPR 846, 849 (1989); *S.I.U. de P.R. v. Otis Elevator Co.*, 105 DPR 832, 836-837 (1977); *United Steelworkers v. Paula Shoe Co., Inc.*, 93 DPR 661, 667 (1966).

*Casinos P.R.*, supra, pág. 352. Nuestro Alto Foro ha sido enfático al sostener que "el tribunal de instancia no debe inclinarse fácilmente a decretar la nulidad del laudo, a menos que efectivamente el mismo no haya resuelto la controversia con arreglo a derecho, según lo pactaran las partes." *Rivera v. Samaritano & Co.*, supra, pág. 609; reiterado en *Depto. Educ. v. Díaz Maldonado*, supra, pág. 327; *Constructora Estelar v. Aut. Edif. Pub.*, supra, pág. 34. Nuestro Tribunal Supremo ha sido enfático al señalar que, una mera discrepancia de criterio con el laudo no justifica la intervención judicial, pues ello es contrario a los fines del procedimiento arbitral de resolver las controversias rápidamente, sin los costos y demoras de los procesos judiciales. *Íd.*

Esbozada la normativa jurídica del caso de epígrafe, procedemos a aplicarla.

### III

La parte peticionaria nos solicita que revisemos la *Orden* emitida por el foro de primera instancia el 22 de mayo de 2025, donde declaró No Ha Lugar la *Solicitud de Reconsideración* sobre la denegatoria del *Memorando de Costas y Honorarios de Abogado*, presentado por la HEOAMA.

Como primer señalamiento de error, la parte peticionaria arguye que, el foro de primera instancia erró al desatender lo que constituye temeridad para propósitos de aplicar honorarios de abogado,

En su segundo señalamiento de error, la parte peticionaria sostiene que, el foro *a quo* incidió al no obedecer el mandato de ley vigente y denegar la concesión de honorarios de abogado.

El Tribunal de Primera Instancia, mediante la *Sentencia* emitida el 15 de abril de 2025, determinó que, el ente con jurisdicción para dilucidar la controversia medular del caso de epígrafe es el Negociado de Conciliación y Arbitraje.

En vista de que, los méritos de la controversia no han sido resueltos por el foro con *expertise*, es decir, por el Negociado de Conciliación y Arbitraje, nos abstendremos de intervenir en esta etapa de los procedimientos.

Tras evaluar detenidamente el recurso presentado por la parte peticionaria, y luego de una revisión colegimos que no procede la expedición del auto solicitado. Los señalamientos de error antes reseñados, por los fundamentos aducidos en la petición, no pueden activar nuestra jurisdicción discrecional en el caso de autos. La decisión recurrida no es manifiestamente errónea y encuentra cómodo asilo en la sana discreción del Tribunal de Primera Instancia.

Por otro lado, la parte peticionaria tampoco ha logrado persuadirnos de que nuestra abstención apelativa en este momento y sobre el asunto planteado constituiría un rotundo fracaso de la justicia. Regla 40 del Reglamento del Tribunal de Apelaciones, *supra.*

**IV**

Por los fundamentos antes expuestos se deniega la expedición del auto de *certiorari.*

Notifíquese.

Lo acordó y manda el Tribunal, y certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones